IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARREN CHASE, #326-514
    Plaintiff   :

 v.           :  CIVIL ACTION NO. CCB-06-2452

THE DIRECTOR OF MENTAL HEALTH :
AT THE PATUXENT INSTITUTION, *et al.*
    Defendants  :

## MEMORANDUM

On September 19, 2006, plaintiff Warren Chase, presently incarcerated at the Maryland Correctional Adjustment Center ("MCAC"), filed a motion for temporary restraining order and/or preliminary injunctive relief alleging that he suffers serious long-term mental health disorders and is suicidal. He claimed that neither his present confinement within the Maryland Division of Correction nor placement at Patuxent Institution is sufficient to treat his conditions and requested placement at one of three Maryland state mental hospitals. Because several of these allegations, if true, raised serious questions about his safety and well-being, the Office of the Maryland Attorney General was ordered to respond to the motion, which was docketed as a civil rights action filed pursuant to 42 U.S.C. § 1983.

The response, construed as an unopposed motion for summary judgment,[1] has been received. Paper No. 9. Several nondispositive motions filed by plaintiff also are pending. Paper Nos. 2, 3, 5, 7, 11 and 12. No hearing is needed to resolve the Eighth Amendment issues raised in this case. *See* Local Rule 105.6 (D. Md. 2004).

The court first will address plaintiff's pending motions. Plaintiff's initial request for

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk on November 6, 2006, informed plaintiff that: defendants had filed a dispositive motion; plaintiff had seventeen days in which to file written opposition to the motion; and if plaintiff failed to respond, summary judgment could be entered against him without further notice. (*See* Paper No. 10). Plaintiff has chosen not to respond.

leave to proceed in forma pauperis (Paper No. 2) shall be granted and his second request (Paper No. 5) will be denied as moot. Plaintiff's November 11, 2006, motion for a temporary restraining order (Paper No. 11) alleges that plaintiff has been deprived of personal property, including legal materials. The issue of access to the courts raised in the motion is the subject of a motion for temporary restraining order filed on October 10, 2006, in *Chase v. Warden*, Civil Action No. CCB-05-2985 (2005). *Id.*, Paper No. 45. The Attorney General has responded in that action indicating that as of November 13, 2006, plaintiff had received all of his property, which apparently had not "caught up to him" during his recent transfers among Maryland prisons. *Id.*, Paper No. 47. The court is satisfied that plaintiff has received his legal materials and will deny his request for injunctive relief contained in Paper No. 11. For reasons apparent herein, the remaining motions (Paper Nos. 3, 9, and 11) also shall be denied.

Turning to the pending dispositive motion, the court notes that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *See Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Furthermore, when ruling on a motion for summary judgment, the court must draw all reasonable inferences in

favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The parties do not dispute that plaintiff suffers psychological problems. In order to prevail on his constitutional claim that he has been denied mental health treatment and should be transferred to a Maryland state mental hospital, plaintiff must demonstrate that defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard."). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition and not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).[2]

"'[B]ecause society does not expect that prisoners will have unqualified access to health

---

[2] Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).  In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention.  *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

The uncontroverted declarations of MCAC psychologist Carrie Eckhauser and psychiatrist Yves Edouard, M.D., disclose the following pertinent information.  Psychological and psychiatric care are afforded MCAC prisoners.  Prisoners may attend regular sessions with a psychiatrist, may be prescribed medications, and if experiencing acute mental health problems may be referred to the Patuxent Institution, where the Maryland Division of Correction ("DOC") operates a full-scale mental health hospital.  Once a Patuxent patient is stabilized, he may continue to be housed at Patuxent or sent to a DOC prison facility.  Paper No. 9, Exhibit 1, ¶¶ 2-3.  By his own admission, plaintiff has been hospitalized at Patuxent on at least five separate occasions, most recently in July, 2006.  Paper No. 1 at 2.

Plaintiff was transferred from the Maryland Reception, Diagnostic and Classification Center ("MRDCC") on August 29, 2006, one day after he attacked and injured a female correctional officer.  Paper No. 9, Exhibit 1 at 2, ¶ 4; *see also Chase v. Warden*, Civil Action No.

CCB-06-2309 (D. Md. 2006), Paper No. 4, Attachment A. He was screened and referred for mental status evaluation and psychiatric treatment. Paper No. 9, Exhibit 1 at 2, ¶ 4(1). A September 1, 2006, initial evaluation did not find him in acute distress. *Id.* On September 13, 2006, the same day he signed the complaint in this case, he refused to see the psychiatrist during a regularly scheduled appointment. *Id.*, Exhibit 1 at 2, ¶ 4(3). This refusal continued for three additional appointments scheduled for September 20, September 25, and October 26, 2006. After the fourth refusal, psychiatry staff indicated that plaintiff would only be seen on an "as-needed" basis. *Id.*, Exhibit 1 at 2, ¶ 4(4)-(6). On October 30, 2006, plaintiff refused to sign a release form authorizing psychology staff to provide records to the Maryland Attorney General for use in connection with this case. *Id.*, Exhibit 1 at 3, ¶ 7.

Plaintiff cannot prevail on his Eighth Amendment claim where he has consistently refused to participate in the available psychiatric evaluation and treatment offered to him. In essence he "harbors a different opinion than his custodians as to the correctness of his course of treatment." *Goff v. Bechtold*, 632 F.Supp. 697, 698 (S.D.W. Va. 1986). This difference, however, does not infringe on a constitutional right. *Id.*, 632 F.Supp. at 699. Accordingly, a separate order shall be entered denying injunctive relief, granting summary judgment to defendants, and closing this case.

| November 30, 2006 | /s/ |
|---|---|
| Date | Catherine C. Blake |
| | United States District Court |